# STATE OF VERMONT

# ENVIRONMENTAL COURT

Secretary, Vermont
Agency of Natural
Resources, Plaintiff,

}
}
}
}
}
}
}
}

Docket No. 279-12-02
Vtec

v.

Thomas Doran,
Defendant.

## Decision and Order on Petition for Contempt

The Secretary of the Agency of Natural Resources is represented by Gary Kessler, Esq.; Defendant Thomas Doran represented himself. On May 7, 2004, the Court held an evidentiary hearing on the Agency's petition to hold Defendant in contempt for failure to carry out the terms of a judgment order issued by the Court by default, after Defendant failed to file an answer to the Secretary's complaint for enforcement of an Administrative Order that became final. After a hearing on the record held on May 7, 2004, the Court finds and concludes as follows.

Procedural History

In March of 2002, the Agency issued an Administrative Order regarding Mr. Doran's property at 1165 Creek Road in Castleton. The Administrative Order was personally served on him on April 2, 2002. Mr. Doran did not[1] request a hearing on that administrative order, and it became final. Because no hearing was requested and the Administrative Order became final, in the present case this Court does not have jurisdiction to review or to change the Administrative Order in any way.

The Administrative Order required Mr. Doran to do three things: to pay a penalty of $3,000; to immediately cease all unlawful burning and disposal of solid waste; and within 60 days to " remove all illegally disposed solid waste to a certified facility and provide receipts to the Agency . . . that demonstrate that the materials were properly disposed."

On December 2, 2002 the Agency served a summons and complaint on Mr. Doran, commencing the above-captioned case. This case is an enforcement action under 10 V.S.A. § 8014 for failing to comply with the final Administrative Order. The relief requested in this enforcement action was for Mr. Doran to remove all illegally disposed solid waste to a certified facility (and to provide receipts demonstrating that the materials were properly disposed), to pay the $3,000 penalty imposed by the Administrative Order, and " otherwise" to comply with the provisions of the Administrative Order and specified sections of the Vermont Air Pollution Control Regulations and Solid Waste Management Rules.

Mr. Doran did not file an answer, or otherwise appear in the enforcement action. The Agency of Natural Resources moved for a default judgment and the Court granted the Agency's motion for default judgment on March 14, 2003. The default judgment order was personally served on Mr. Doran in June 2003. In December of 2003, Mr. Doran informally requested that the Court set aside the default judgment order. The Court gave Mr. Doran time to file a memorandum in support of his request to set aside the default judgment, to explain why he had failed to file an answer to the complaint, and to file the answer. He did not do so, and his request to set aside the default judgment was therefore denied.

Therefore, the only matter now pending before the Court is the Agency's petition for contempt of that default judgment order.

Findings and Order

Mr. Doran owns and operates a roofing business at a location other than the property at issue in the present case. The property at issue in this case, at 1165 Creek Road in Castleton, now contains an existing garage and a large dumpster, into which Mr. Doran places construction and demolition debris from his roofing jobs. The dumpster is emptied periodically by a waste hauling company: Casella Waste Management. Behind the garage is a steep bank leading down to a lower elevation of land.

At the present time Mr. Doran continues to dump old slate shingles (removed during re-roofing jobs) on the ground at the site near the top of the bank; some of those shingles slide down the bank. Slate is quarried in the vicinity of Castleton, and Mr. Doran considers slate roofing shingles to be an indigenous rock material which is not illegal to dump on the ground. It is not clear whether Mr. Doran intends

simply to dispose of these old slate shingles on the site, or to stockpile them there for later reuse for historic preservation roofing work or for sale of the slate pieces for other purposes.

In 1993, Mr. Doran had dumped construction and demolition debris at the site, including brick, cinderblock, old slate shingles, and old asphalt. He had burned construction and demolition debris on the site. Some of the dumped material and remains of the burned material had been dumped or had slid over the bank.

In connection with the 1993 event, Mr. Doran cooperated with the ANR environmental enforcement officer who came to the site. Mr. Doran agreed to remove the burn barrel and to remove the burned and dumped material, and did so. The ANR environmental enforcement officer at that time had estimated that a 30-cubic-yard roll-off container would be sufficient for removal of the material. Mr. Doran removed that quantity of material in connection with the 1993 event. That amount of removal cleaned up the site to the satisfaction of the ANR environmental enforcement officer at that time, although some inert brick and block was left on the site and was not removed. In connection with the 1993 event, the ANR environmental enforcement officers were not concerned about the brick and block material that remained at the site.

Mr. Doran installed the 22-cubic-yard dumpster at that location in 1994; it has been used since that time for the disposal and removal of construction and demolition debris.

In December of 2001, an Environmental Enforcement Officer observed brick, mortar, slate and lumber material deposited on and over the steep bank.[2]

Mr. Doran may very well be eligible for Agency approval to allow the inert slate shingles and/or other masonry waste materials to remain in place on the site. This approval is called an > Insignificant Waste Management Event" approval and may be obtained by application to the ANR's Waste Management Division. Such an approval may require an inspection and some degree of work with an appropriately-sized backhoe to demonstrate what materials are in place on the site. If it is obtained, Mr. Doran may be approved not only to leave the inert materials on the property in conformance with the approval, but also to continue in the future his practice of placing old slate shingles on the property, either for disposal or stockpiling for reuse. However, without such approval he may not continue this practice, and under

the default judgment order must remove the materials already placed there. As explained above, this Court has no jurisdiction to review or change the terms of the original administrative order that became final.

Based on the findings, conclusions, and reasoning of this decision, pursuant to 12 V.S.A. § § 121-123; V.R.C.P. 76; and the Court's inherent power of contempt to enforce its orders under 10 V.S.A. Chapter 201, it is hereby ORDERED and ADJUDGED that Respondent is found in contempt of the default judgment order issued in the underlying enforcement action under 10 V.S.A. § 8014 to enforce the final administrative order, in two respects: (1) in that he has not paid the $3,000 penalty imposed by that order and has not shown a present inability to pay, and (2) in that he has not applied for an " Insignificant Waste Management Event" approval to leave the materials in place and to continue placing old slate roofing tiles in that location nor has he removed the waste materials from that location.

The Secretary requested that this Court impose an additional penalty of $500 to recognize the Agency's additional costs of enforcing this order. However, because this was a civil contempt action, rather than merely an amendment of or addition to the enforcement action, the Court is restricted to a coercive sanction only. Accordingly, it is hereby ORDERED and ADJUDGED that on or before August 6, 2004, Mr. Doran shall comply with the default judgment order by either applying for an " Insignificant Waste Management Event" approval to leave the materials in place on the property or by removing the waste materials; and that on or before September 7, 2004, Mr. Doran shall comply with the default judgment order by paying the $3,000 penalty imposed by that order. Failure to comply with the deadlines imposed by this order will result in a coercive sanction of $25 per day for each day of noncompliance. The parties may agree to an alternate payment schedule, to an alternate payment amount, and to alternate deadlines, but should submit any such agreed changes to this order as a stipulation to amend this order, signed by both parties.

Any party wishing a separate V.R.C.P. 58 judgment order may propose one for the Court's signature so that it is received by the Court on or before July 14, 2004.

Done at Barre, Vermont, this 6th day of July, 2004.

_____

Merideth Wright

Environmental Judge

---

## Footnotes

1. If Mr. Doran had requested a hearing as explained in that Administrative Order, that Administrative Order would have come before the Court, and the Court could have taken evidence on whether any of the material over the bank was illegally disposed or not, and on whether $3,000 or some other lesser amount (or no penalty at all) would have been a fair penalty amount.

2. During the hearing, this witness, Mr. Urich, referred the Court to his "report;" however, although some of his photographs were admitted into evidence from that visit, no report was offered or admitted.

**STATE OF VERMONT**

**ENVIRONMENTAL COURT**



| Secretary, Vermont Agency of Natural Resources, Plaintiff, | } } } } } } } | Docket No. 279-12-02 Vtec |
|---|---|---|
| v. | | |
| Thomas Doran, Defendant | | |

Order on Pending Motions

The Secretary of the Agency of Natural Resources is represented by Gary Kessler, Esq.; Defendant Thomas Doran represents himself.

Scheduling Order on Motion to Set Aside the Default Judgment

Mr. Doran filed another short letter with the Court on December 1, 2003, enclosing his entry of appearance to represent himself (which itself contains handwritten note: A Being advised by an attorney at this time@ ); and moving to set aside the default judgment in this matter. It again did not appear from the face of the letter filed December 1, 2003, that Mr. Doran had sent a copy to Attorney Kessler, and we have just found out that Attorney Kessler was not sent a copy. This is the last time we will remind Mr. Doran that each party is required by the rules of procedure to send a copy of anything filed with the Court to the other parties in the case and that judges are not allowed to consider any communication from one party unless all the other parties have received copies of it. The Court staff faxed a copy of the December 1, 2003 letter to Attorney Kessler on February 2, 2004 and a copy is enclosed with this order for his information (copy enclosed).

**In the future, Mr. Doran= s failure to send the required copy of any document to Attorney Kessler may result in the denial of any request made in the underlying document, or in other V.R.C.P. 11 sanctions being considered.**

We again repeat the procedural status of this matter to date. The Agency issued an Administrative Order regarding Mr. Doran in March 2002, which was personally served on him on April 2, 2002. Mr. Doran did not request a hearing on that administrative order, and it became final. Because no hearing was requested and the Administrative Order became final, the Court cannot consider the merits of the original administrative order in this case. See 10 V.S.A. Chapter 201.

On December 2, 2002 the Agency served a summons and complaint on Mr. Doran for failing to comply with the final administrative order; that enforcement action is this present case, Docket Number 279-12-02 Vtec. This is an enforcement action filed under 10 V.S.A. ' 8014, to enforce the final administrative order. Mr. Doran did not file an answer, or otherwise appear in the enforcement action, and has not done so to date. The Agency of Natural Resources moved for a default judgment and the Court granted the Agency= s motion for default

judgment on March 14, 2003. The default judgment order was personally served on Mr. Doran in June 2003. The Agency then filed a petition for contempt in the enforcement action, which was set for hearing several times and postponed. We treated Mr. Doran= s July 2003 letter as Mr. Doran= s entry of appearance on his own behalf for the purpose of avoiding a default of the contempt proceedings, and received his entry of appearance as an unrepresented party enclosed with his December 1, 2003 letter.

Until his December 1, 2003 letter, Mr. Doran had not moved to set aside the default judgment or to reopen the enforcement action. Default judgments are disfavored and the rules on reopening cases should be liberally construed in favor of defendants and the desirability of resolving litigation on the merits, see Desjarlais v. Gilman, 143 Vt. 154, 158-59 (1983); Courtyard Partners v. Tanner, 157 Vt. 638, 638-39 (1991). However, Mr. Doran= s > motion= to set aside the default judgment contains no answer to the complaint and no explanation of why he did not answer the complaint when it was served on him, and does not address the V.R.C.P. 60 (b) grounds for reopening a judgment. (Copy enclosed).

Accordingly, so that it is postmarked on or before Friday, February 13, 2004, Mr. Doran may file a memorandum explaining the grounds for his motion, consistent with the rules. It must be addressed to the Environmental Court at the Barre address and a copy must be sent to Attorney Kessler at the same time. Attorney Kessler may file a responsive memorandum within the time provided by the rules and then the Court will rule on whether the default judgment should be set aside and the case reopened. If the case is reopened, we will schedule the hearing on the merits of the case to enforce the administrative order. If the case is not reopened we will schedule the hearing on the contempt petition for failure to comply with the default judgment.

Request for Jury Trial on the Contempt Petition

This is a separate issue from when and whether a jury trial may be required in a civil enforcement action, that is, if Mr. Doran had either requested a hearing on the administrative order (so that it would not have gone into effect as a final administrative order), or if he had answered the complaint in this action by the agency to enforce that final administrative order. We do not now address any issues regarding a jury trial in relation to either of those scenarios.

Rather, all that we have before us at this time (that is, until or unless the enforcement default judgment is reopened) is a civil contempt proceeding to require compliance with the default judgment order. There is no right to a jury trial in a civil contempt proceeding, as the sanctions that can be imposed are limited to those designed to compel compliance with an existing court order. See, <u>International Union, United Mine Workers of America v. Bagwell</u>, 512 U.S. 821, 826-27 (1994). Nor is there any statutory right to a jury trial for civil contempt. 12 V.S.A. '' 121-123; compare V.R.Cr.P. 42(b) for criminal contempt. Accordingly, Defendant= s request for a jury trial on the civil contempt petition is DENIED.

Done at Barre, Vermont, this 4th day of February, 2004.

_____
Merideth Wright
Environmental Judge

## STATE OF VERMONT

## ENVIRONMENTAL COURT

| In re: Appeal of James Goldsmith | } } } } } } | Docket No. 281-12-00 Vtec |
|---|---|---|

<u>Decision and Order on Appellant= s Motions for Summary Judgment</u>

Appellant James Goldsmith appealed from a decision of the Development Review Board (DRB) of the City of Burlington denying his request for a variance to construct a driveway and a parking area in the front yard of an existing duplex. Appellant is represented by Brian P. Hehir, Esq.; the City is represented by Kimberlee J. Sturtevant, Esq.

Appellant posed seven questions in his Statement of Questions, of which Question 5 has been withdrawn. He has moved for summary

judgment on Questions 1, 2 and 3 of the following: 1) whether the proposed driveway is a ' 5.1.9 accessory use[1]; 2) whether the proposed driveway falls within the exception to yard setback requirements under ' 5.3.6(g); 3) whether the proposed driveway is exempt from site plan review under ' 7.1.4; 4) whether the proposed driveway and parking are consistent with the intent of ' 10.1.1; 6) whether the proposed driveway requires a variance under ' 17.1.6; and 7) whether the proposed driveway satisfies the applicable variance criteria.

The following facts are undisputed unless otherwise noted.

Appellant is the current owner of a rectangular parcel of property without frontage on a public street, in the Residential Low-Density zoning district. It has frontage on a private right-of-way located entirely on the neighboring property to the north. Appellant= s property contains a duplex residential building known as 408/410 Colchester Avenue.

A permit for construction of the duplex was issued in December, 1982 to a previous landowner, at which time the private right-of-way was thought to be shared with the neighboring property. A survey in 1998 revealed that the right-of-way is located on the neighbor= s property.

The site plan approved in 1992 indicated a driveway on the northerly side of the Appellant= s property within the apparent thirteen-foot setback, providing access to a four-space parking area in the rear yard. The duplex was built, however, four feet from the surveyed location of the northerly property line, precluding access to the rear parking area without going onto the neighbor= s property. The duplex as built is within eight feet of the southerly property line, which also may preclude access to the rear yard on that side of the building. A mature screen of vegetation has grown up in front of Appellant= s property, between the property and the sidewalk, which screens the front yard from Colchester Avenue.

A dispute arose between Appellant and the northerly neighbor regarding an agreement under which the Appellant and his tenants had had access to the rear parking area using the neighbor= s driveway. Appellant and his tenants have been parking on the street, and will need to park remotely during the winter parking ban. Appellant seeks to construct a gravel driveway/parking area in the front yard. At least some of this area is proposed to extend beyond

Appellant= s property line towards Colchester Avenue and into the City= s property, although still located behind the vegetation screen.

On October 5, 2000, Appellant submitted an application for A Variance for creation of parking area at front of property,@ including a sketch of the proposal. The variance was requested from two provisions of the Zoning Ordinance: ' 5.3.5 (25 foot setback from A major street,@ Table 5-D) and ' 10.1.18 (front yard parking setback).

Questions 1, 2, 3, and 4 of the Statement of Questions are not before the Court, as they were not before the DRB in the decision appealed from. Neither is Question 6 before the Court, as Appellant did not request a ruling from the Zoning Administrator as to whether a variance is required. Rather, Appellant applied for and was denied a variance. All that is before the Court at the present time is Question 7, the merits of the variance. Material facts are in dispute as to some aspects of the merits of the variance, and Appellant has not requested summary judgment on this issue. In particular, facts have not been presented as to when Appellant purchased the property, and whether Appellant or his predecessor has acquired any easement by prescription or by adverse possession over the northerly neighbor= s driveway.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant= s Motion for Summary Judgment on Questions 1, 2, and 3 is DENIED, because those questions, together with Questions 4 and 6, are not before the Court in this appeal, and those questions are hereby DISMISSED.

Based on the parties= memoranda, it appears that an application under some of the sections raised in the dismissed questions should be filed and ruled on before this Court should hear the merits of the variance. It is possible that such other application would render the variance unnecessary or moot. It is also possible that other civil litigation may be necessary to determine Appellant= s rights in the formerly-used driveway. Accordingly, we will place this appeal on inactive status and request that the parties report in writing by August 30, 2001, regarding the status of this appeal, and whether they request a telephone conference, which can be scheduled for September 14, 2001.

Done at Barre, Vermont, this 7th day of August, 2001.

_____
Merideth Wright
Environmental Judge

---

## Footnotes

1.    Though the City agrees with Appellant that the project is a § 5.1.9 accessory use and may to some extent encroach on the front yard setback under § 5.3.6(g), the City maintains that these questions are not properly raised in this appeal because they were not before the DRB on the variance request.